Filed 2/5/14  In re A.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | C074566 |
| COLUSA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>I.V.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JU3656, JU3657, JU3658) |

I.V., mother of the minors, appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends there was insufficient evidence that her continued custody of the minors was likely to result in

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

serious emotional or physical damage to the minors and that the juvenile court erred in not finding that the beneficial parental relationship exception to adoption applies.

We will affirm the juvenile court's orders.

BACKGROUND

On May 9, 2012, the Colusa County Department of Health and Human Services (Department) filed a section 300 petition on behalf of minors Ad. (then almost three years old), A. (then two years old), and An. (then two months old). The petition was also filed on behalf of the minors' half-sibling, P. (then 11 years old).[2] The allegations in the petition centered around the parents' use of methamphetamine and minors Ad. and A. testing positive for methamphetamine. Mother had also failed to follow up with prenatal care for An., missed her scheduled caesarean section delivery, and tested positive for methamphetamine at his birth.

The minors had been the subject of a previous dependency case, prior to An.'s birth. Mother had a history of alcohol abuse and father was incarcerated for domestic violence. The previous dependency had been terminated in August 2011.

The minors were found to be Indian children but the tribe decided not to intervene. Instead, the tribe asked to be provided notices of hearings and to be kept informed of the parents' progress and any decision to pursue adoption or termination of parental rights.

The juvenile court sustained the petitions on June 4, 2012, and minors Ad., A., and An. were placed together in foster care. P. was placed in a separate home. The parents engaged in services and were having supervised visitation three times weekly. The juvenile court declared the minors dependents of the court at the July 16, 2012, disposition hearing.

---

[2] This appeal was taken from the orders entered at the section 366.26 hearing as to minors Ad., A., and An. only.

2

On August 4, 2012, mother was arrested for public intoxication and father, who had also been drinking heavily, was arrested for spousal abuse. The parents had just begun unsupervised visitation prior to the arrests but supervised visits were reinstated. Unsupervised visits were resumed in September 2012 and the Department planned to begin unsupervised weekend visits on October 5, 2012. Mother, however, was arrested again for public intoxication on October 13, 2012. She had been so intoxicated that she did not remember her arrest. At that point, mother recognized she needed to enter an inpatient treatment program and entered the Salvation Army program on November 26, 2012. Supervised visits were reinstated.

Reunification services were terminated on February 15, 2013. A section 366.26 selection and implementation hearing was held on July 15, 2013. By that time, mother was having biweekly, two-hour supervised visits with occasional Saturday visits. The juvenile court received into evidence two social workers' reports, the adoptions specialist's report, and the report of Indian Child Welfare Act specialist, Dr. Art Martinez. Dr. Martinez and the social worker also testified at the hearing.

At the conclusion of the hearing, the juvenile court found beyond a reasonable doubt that continued custody by the parents was likely to result in serious emotional or physical damage to the minors, found the minors were adoptable, and that no exception to adoption applied. Regarding the beneficial relationship exception to adoption, the juvenile court found that the minors have a relationship with mother but the relationship does not outweigh the benefits the minors would receive from permanency, and there was little evidence of detriment to the minors should parental rights be terminated. The juvenile court terminated parental rights.

DISCUSSION

I

Mother claims there was insufficient evidence presented at the section 366.26 hearing that her continued custody of the minors was likely to result in serious emotional or physical damage to them. We disagree.

In order to terminate parental rights when an Indian child is involved, there must be "a determination, supported by evidence beyond a reasonable doubt . . . that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(f); see also § 366.26, subd. (c)(2)(B)(ii).)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is beyond a reasonable doubt, the reviewing court must determine if there is any substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- to support the conclusion of the trier of fact. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination, all conflicts are to be resolved in favor of the prevailing party and issues of fact and credibility are questions for the trier of fact. (*People v. Johnson, supra,* 26 Cal.3d at p. 578; *In re Angelia P., supra,* 28 Cal.3d at p. 924; *In re Jason L., supra,* 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.,* (1994) 7 Cal.4th 295, 318.)

Here, mother identifies no evidence establishing she was able to safely take physical custody of the minors. Although she relies upon Dr. Martinez's testimony to support her argument, Dr. Martinez specifically stated that mother was not at a place where return of the minors was indicated. He also noted that, while she was doing well

4

in her recovery, she was living at the Salvation Army Treatment Center where there were "a few observed issues of harm or risk."

Mother's therapist also opined that mother was doing well in her approach to recovery, but said nothing to establish that it was safe to return the minors to mother's custody. The social worker believed that, due to mother's progress in recovery, six months of additional reunification services may be warranted. But she did not suggest return of the minors with maintenance services.

Mother claims the juvenile court could not find that her continued custody of the minors was likely to result in serious emotional or physical damage to them, because Dr. Martinez did not believe serious emotional or physical damage would result if mother had legal custody of the minors. But even if the juvenile court accepted and adopted Dr. Martinez's opinion that legal custody would not result in serious emotional or physical damage to the minors, the juvenile court must still make the finding of detriment if mother's physical custody would do so. The use of the word "custody" in 25 U.S.C. section 1912(f) and section 366.26, subdivision (c)(2)(B)(ii) includes the notion of both legal and physical custody. The Indian Child Welfare Act recognizes different types of custody. (*In re Crystal K.* (1990) 226 Cal.App.3d 655, 667-668.) The use of the phrase "continued custody," without delineating the type, means the phrase encompasses both physical and legal custody. (*Ibid.*)

In sum, mother points to no evidence to establish that return of the minors to her physical and legal custody would be safe for the minors. To the contrary, the adoptions specialist reported that mother "became overwhelmed when the children had differing needs" and had to rely on the visitation supervisor for assistance -- even with the simple situation of one child needing to use the restroom while she was dressing the others. The adoptions specialist observed that mother would need to be able to address such situations before being ready to have the minors returned to her care. Mother was still limited to biweekly, two-hour supervised visits and Dr. Martinez expressed concern that

5

"without the safety and security of the current environment, it is at least possible that the mother's enduring post-traumatic responses would reengage, therefore causing her to become emotionally volatile leading to mismanagement of the children." He did not believe she was currently able to care for the minors.

Thus, on this record, the trial court did not err in finding continued custody of the minors by mother was likely to result in serious emotional or physical damage to them.

II

Mother also argues that the selection of a permanent plan of adoption is not supported by substantial evidence. She relies on the beneficial parental relationship exception.

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' [Citations.] If the court finds the child is adoptable, it must terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances which constitutes an exception to termination of parental rights. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553; *In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Evid. Code, § 500.)

One of the circumstances under which termination of parental rights would be detrimental to the minor is when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) Here, there was no dispute that mother maintained regular visitation and contact with the minors. According to mother, the evidence established

6

that the minors would benefit from a continuing relationship with her.  Mother relies on statements from Dr. Martinez, who said there is a positive relationship that would be beneficial to continue and that there would be no detriment to the minors should they continue it.  The social worker also believed the minors would benefit from a post-adoption continued relationship with mother.

While there was evidence that the minors would benefit from a continued relationship with mother, that is not enough to create a compelling reason for determining that termination of parental rights would be detrimental to the child as required to establish the beneficial parental relationship exception to adoption.  The benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re C.F.*, *supra*, 193 Cal.App.4th at p. 555.)  "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

Even if mother has a relationship with the minors, she did not make the requisite showing because she failed to demonstrate that the minors would be greatly harmed by termination of parental rights.  Dr. Martinez testified only that there would be "some detriment" to the minors if their relationship with mother was terminated.  The social worker testified that she thought that "any time parental rights are terminated, it is a

7

detriment to the children, but I also think that permanency for these kids is the most important thing at this point, long term, safe home for the children."  The adoptions specialist also stated that the minors were "in desperate need for permanence."  Mother did not meet her burden of establishing that terminating her parental rights would deprive the minors of a "substantial, positive emotional attachment such that [they] would be greatly harmed" and that such harm outweighed the well-being the minors would gain in a permanent home.  (See *In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)

Mother argues that guardianship would provide the minors with the stability and permanence they need, while still permitting a continued relationship.  The permanent plan preferred by the Legislature, however, is adoption, not guardianship.  (*In re Ronell A., supra*, 44 Cal.App.4th at p. 1368.)  " 'The Legislature has decreed . . . that guardianship is not in the best interests of children who cannot be returned to their parents.  These children can be afforded the best possible opportunity to get on with the task of growing up by placing them in the most permanent and secure alternative that can be afforded them.' [Citation.]  Unlike adoption, a guardianship is 'not irrevocable and thus falls short of the secure and permanent placement intended by the Legislature.' [Citation.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.)  Particularly in the absence of evidence that the minors would be greatly harmed by termination of parental

rights, the juvenile court was entitled to conclude that only adoption, as the preferred disposition, would promote the best interests of the minors.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                        _____MAURO_____, J.


We concur:


_____RAYE_____, P. J.


_____HULL_____, J.

9